**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Sanford P. Shatz (SBN 127229)
Zeeshan Iqbal (SBN 337990)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone:  (949) 381-5900
Facsimile:  (949) 271-4040
Email:        bpaino@mcglinchey.com
                 sshatz@mcglinchey.com
                 ziqbal@mcglinchey.com

Attorneys for *Defendant* **PNC BANK, N.A.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA LEE DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., THE PNC FINANCIAL SERVICES GROUP, INC.,<br><br>Defendants. | Case No.: 2:22-cv-05819-SPG-AS<br><br>**PNC BANK, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing**:<br>Date:   February 14, 2024<br>Time:  1:30 p.m.<br>Crtm:  5C |

*Defendant* PNC Bank, N.A. ("PNC") respectfully submits this reply in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (the "Motion"). This reply is supported by the points and authorities cited herein and the record currently before the Court.[1]

///

///

///

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Joint Brief [Doc. 99-1].

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' complaints sought redress for alleged errors with the credit reporting for the PNC Loan. Their claims, as pled, are straightforward: the credit reporting for the PNC Loan was inaccurate because they allegedly paid off the PNC Loan (they did not) and, therefore, the tradelines for the PNC Loan should not have been reported as open and active, the balance and past-due amounts should have been reported as zero, and the account should not have been reported as past due for any period of time. (JD Compl., ¶¶ 19-27; CD Compl., ¶¶ 20-28; JAE, **Ex. 3.2**, ROG 12). PNC's summary judgment evidence demonstrates, conclusively, that Plaintiffs did not, in fact, satisfy their obligations under the PNC Loan at the time they submitted their credit reporting disputes. Having been confronted with the indisputable fact, Plaintiffs obfuscate. They first present various red-herring arguments that, although not entirely clear, appear to be aimed at establishing that they satisfied their obligations even though they did not. Simply stated, it is indisputable that Plaintiffs did not satisfy their obligations, as determined by the express and plain terms of the Contract. Whether PNC or a predecessor provided Gravity with an erroneous payoff quote, or made statements to Plaintiffs that led them to believe their obligations had been satisfied, or has allegedly incomplete records, has absolutely no bearing on this issue.

The inescapable reality that Plaintiffs did not satisfy their obligations under the PNC Loan has also led Plaintiffs to change the theory of their claims. Plaintiffs now argue – for the first time in the Joint Brief – that PNC's reporting for the PNC Loan was "materially misleading," claiming (1) PNC's reporting created a false impression concerning Plaintiffs' financial irresponsibility; (2) the reporting should have included details about the role that BBVA and/or PNC played in causing any alleged inaccuracy; and/or (3) PNC failed to report that Plaintiffs continued to dispute the accuracy of the PNC Loan. It is wholly improper for Plaintiffs to change the theory of their claims at this juncture in the case. Plaintiffs' arguments fail on this basis alone.

1  Even if it were proper for Plaintiffs to change their theory (it is not), their theory is
2  meritless because there was nothing misleading, let alone materially misleading, about
3  PNC's credit reporting. The summary judgment evidence otherwise makes clear that
4  there was nothing unreasonable about PNC's investigation into Plaintiffs' dispute.
5  Because the PNC Loan was never paid in full, a fact that PNC could easily verify by
6  reviewing its own records,[2] it was entirely and indisputably reasonable for PNC to rely
7  on its records when responding to Plaintiffs' dispute. Given that PNC conducted a
8  reasonable investigation, there is obviously no merit to Plaintiffs' contention that PNC
9  willfully violated the FCRA. And Mr. Davis's claim for violation of the Rosenthal Act
10 – he notably concedes that he has not stated a claim for violation of the FDCPA – fails
11 as it is premised entirely on his erroneous and factually unsupportable contention that
12 he did not owe any remaining sums on the PNC Loan after Gravity tendered the
13 Gravity Payment. PNC is entitled to judgment.

## II.  ARGUMENT

### A.  PNC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FCRA CLAIMS

Plaintiffs advance several arguments in the Joint Brief aimed at overcoming the indisputable fact that they did not pay the PNC Loan in full and that PNC's credit reporting was therefore inaccurate. They specifically argue that there are disputed issues as to whether: (1) BBVA provided Gravity with a payoff quote for the PNC Loan; and (2) PNC's communications with Plaintiffs impacted their obligations under the PNC Loan or the accuracy of PNC's credit reporting. They also argue that there were alleged accounting and reporting discrepancies with the PNC Loan, though they do not clearly tie these purported discrepancies with the elements of any of their

---

[2] Plaintiffs obtained the $61,426.22 loan in July 2021. JAF 2, 69. They made three payments of $883.50 each on July 21, 2021, August 16, 2021, and September 16, 2021. JAF 70, 72, 75. They made a fourth payment of $58,694.61 on September 27, 2021. JAF 118. These four payments totaled $61,345.11, which is less than the original loan amount, and could not have paid it off. Plaintiff made a fifth and final payment of $775.48 on November 8, 2022, more than one year later, JAF 100, which satisfied the outstanding principal and interest.

claims, and that PNC's reporting for the PNC Loan "created a false impression," a theory that Plaintiffs never previously advanced. Lastly, Plaintiffs argue that there are disputed issues of fact as to whether PNC conducted a reasonable investigation into Plaintiffs' disputes and whether PNC willfully violated the FCRA. None of these arguments save Plaintiffs' deficient claims.

### 1. The Circumstances of the Payoff Quote are Irrelevant

In the Joint Brief, Plaintiffs initially argue that "[t]he circumstances surrounding the [Gravity Payment] are in dispute and have a material impact on the outcome of the immediate litigation." (Joint Brief, 23:12-13). There is no merit to this argument. To the contrary, even if Plaintiffs could prove that BBVA provided Gravity with a payoff quote for the PNC Loan (they cannot), this would not change the fact that Plaintiffs did not satisfy their obligations under the PNC Loan as a matter of fact and law. Notably, under Texas law, a "claim is not discharged by the acceptance by the creditor of a sum less than the amount actually due as a result of oversight on his part or mistake as to the amount of the debt." *Rhea v. Smith*, 462 S.W.2d 78, 81 (Tex. Civ. App. 1970); *see also Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency*, 517 S.W.2d 869, 874 (Tex. Civ. App. 1974). By virtue of this principle, it is immaterial whether BBVA provided Gravity with a payoff quote for the PNC Loan – *i.e.,* even if BBVA provided Gravity with an erroneous payoff quote, the provision of such a quote did not discharge Plaintiffs' obligations under the PNC Loan, especially where, as here, the amount of the payoff quote that Gravity relied on was obviously incorrect. What matters instead is whether Plaintiffs, in fact, paid off the PNC Loan. The indisputable evidence demonstrates that they did not.

Further, Plaintiffs' argument that there is a disputed issue of fact regarding the source of the payoff quote for the PNC Loan relies on inadmissible evidence. Indeed, Plaintiffs base their argument on declaration testimony from Melissa Jones, an employee of Gravity. As explained in the Joint Appendix of Objections, the entirety of

Ms. Jones' declaration is inadmissible due to Plaintiffs' failure to disclose Ms. Jones as a potential witness in their Initial Disclosures. Plaintiffs brush off their failure to disclose Ms. Jones as a potential witness by arguing that PNC was made aware of Ms. Jones' identity during the course of discovery. This misses the point. It is not enough that PNC may have been aware of Ms. Jones' identity. Instead, PNC was entitled to notice of Plaintiffs' intent to rely on Ms. Jones as a potential witness. *See Clean Harbors, Inc. v. CBS Corp.*, 875 F.Supp.2d 1311, 1317 (D. Kan. 2012) (excluding a declaration where a defendant knew the identity of an individual but the plaintiff failed to disclose the individual as a potential witness); *see also Marksberry v. FCA US LLC*, 2021 WL 2407579, at *3 (D. Kan. 2021) ("To be clear, knowing the identity of a person is not the same as knowing the opposing party plans to rely on him as a witness and does not alleviate the mandates of Rule 26(a) and (e)."). Because Plaintiffs failed to disclose Ms. Jones **as a potential witness** (a fact they do not dispute), they are precluded from relying on her testimony to defeat summary judgment. Ms. Jones' testimony is otherwise inadmissible for a host of other reasons, as set forth in the Joint Appendix of Objections. Conversely, PNC submitted declaratory evidence establishing that neither PNC nor BBVA provided Gravity with a payoff quote. (*See* Doc. 99-4, ¶ 10); Fed. R. Evid. 803(7).

### 2. PNC's Communications Are Irrelevant

Plaintiffs next argue that PNC's communications and the significance thereof are in dispute and have a material impact on the outcome of this case. (Joint Brief, 26:17-19). They reference various communications that PNC allegedly made, including: (1) a communication to Gravity on November 23, 2021; (2) a GAP refund communication from December 2021; (3) certain communications with Mrs. Davis "throughout the first half of 2022." These communications have absolutely no relevance to Plaintiffs' claims. To the contrary, PNC's alleged communications to Gravity and Plaintiffs regarding the debt did not change the fact that, as a matter of

law, Plaintiffs did not satisfy their obligations under the PNC Loan. Unsurprisingly, Plaintiffs cite to no authority whatsoever to support the proposition that PNC's alleged communications regarding the PNC Loan serve as a basis for discharging their remaining debt obligations.

Ultimately, Plaintiffs' reliance on purported communications from PNC is nothing more than a red herring. Their argument based on these communications is simply not tethered to any of their pleaded claims or theories. Plaintiffs state that "PNC concedes that Plaintiffs relied upon multiple statements from PNC that [they] owed nothing on the PNC [Loan]." As an initial matter, PNC has made no such concession. Regardless, nowhere in the Joint Brief or within their evidentiary submissions do Plaintiffs articulate how they relied on PNC's statements, much less how any such reliance impacts their claims. In fact, one of the statements Plaintiffs reference – the alleged statement to Gravity – was not even made to Plaintiffs and the record reflects that Plaintiffs were not even aware of the statement until after this lawsuit was already pending. (JAE, **Ex. 3.12**, p. 7). There is otherwise no admissible evidence before the Court regarding the alleged statement made to Gravity, as previously discussed.

More critically, none of Plaintiffs' claims are premised on a theory that PNC miscommunicated to them the amount that was due on the PNC Loan. It is improper for Plaintiffs to change the theory of their claims at this juncture. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (finding that the plaintiff failed to provide adequate notice of a different theory of liability under the ADA); *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (quotation omitted). Even if Plaintiffs were permitted to change the theory of their claims, they have not identified any authorities supporting their suggestion that PNC's communications regarding the PNC Loan represent a

legal basis for discharging the actual obligations that were set forth in the underlying contract. Absent such authorities, PNC's communications regarding the status of the PNC Loan have no impact on whether PNC's credit reporting was inaccurate.

### 3. Alleged Accounting and Reporting Discrepancies

Plaintiffs devote a significant portion of the Joint Brief to discussing purported accounting and reporting discrepancies related to the PNC Loan. Their arguments are, again, a red herring.

Plaintiffs argue that PNC's History Card Report is "important." Joint Brief, 29:7. It accurately contains PNC's internal records. The parties respective rights and responsibilities are governed by the plain terms of the contract. As shown in the motion, and reviewing the History Card Report, Plaintiffs clearly did not fully repay the loan at the time of the Gravity loan.

Plaintiffs argue that the Account Statements contain contradictions. Joint Brief, 30:11. However, they are irrelevant to Plaintiffs' claims - none of their claims are based on the statements and Plaintiffs testified that they did not receive them.

Plaintiffs argue that the ACDV responses contain discrepancies. Joint Brief, 31:20. However, none of Plaintiffs' claims are based on discrepancies between ACDV responses; rather, their claims are based on their theory that PNC should have reported the balance as zero, with no past due payments. Plaintiffs cannot change their theory to avoid summary judgment.

### 4. Plaintiffs' False Impression Theory

None of Plaintiffs' pleaded claims are premised on a theory that PNC's reporting for the PNC Loan "created a false impression."

PNC was obligated to charge-off the account after 120 days of delinquency. *See Williams v. Equifax Info. Servs., LLC*, 2019 WL 324737, at *4 n. 3 (C.D. Cal. 2019) (discussing Federal regulations requiring a creditor to charge-off an installment loan after 120 days of delinquency). PNC complied with these regulations as the account

1  was properly charged-off after 120 days of delinquency. There is simply no dispute
2  that Plaintiffs did not satisfy their obligations on the PNC Loan, failed to tender
3  payments (in good funds) for a period of 120 days, and that the account was, in fact,
4  charged-off. The reporting of the charge-off was therefore accurate, not misleading in
5  any way as Plaintiffs argue.
6        The cases cited by Plaintiff do not support their position. In *Valentine*, the
7  furnisher was reporting a previous eviction action without noting the eviction case was
8  dismissed. *Valentine v. First Advantage Saferent, Inc.*, No. EDCV 08-142 VAP
9  (OPx), 2009 U.S. Dist. LEXIS 110153 (C.D. Cal., Nov. 23, 2009). In *Erickson* (a case
10 that does not involve credit reporting), Keith Erickson authorized a search of sex-
11 offender records as part of his application to coach his son's little league team, only to
12 find his father's record being conflated with his. *Erickson v. First Advantage
13 Background Serv. Corp.*, 981 F.3d 1246. In *Saunder*, Rex Saunders traded in a vehicle
14 and disputed the late fees and charges after being consistently told he had no balance
15 on the loan after the trade in; Saunders went as far as confirming with the Department
16 of Motor Vehicles that there was no lien on his new vehicle. *Saunders v. Branch
17 Banking & Tr. Co.*, 526 F.3d 142 (4th Cir. 2008). Even the most similar case,
18 *Abukhodeir*, is distinguishable. In *Abukhodeir*, the Plaintiffs had set up auto payments
19 for their mortgage (which for unknown reasons had not been processed by
20 Amerihome) and confirmed with Amerihome that the late payments would be
21 removed and the reporting would be corrected. *Abukhodeir v. AmeriHome Mortg. Co.,
22 LLC*, No. 8:21-cv-563-WFJ-JSS, 2021 U.S. Dist. LEXIS 149742 (M.D. Fla. Aug. 10,
23 2021). Similarly, Plaintiff had set up autopayment for the PNC Loan, but intentionally
24 stopped payments after the Gravity Loan, believing (incorrectly) that the loan had
25 been paid off. Both *Bush* and *Monroe* involved cases with actual misconduct of a third
26 party. *See Bush v. Roundpoint Mortgage Servicing Corp.*, 122 F.Supp.3d 1347 (M.D.
27 Fla. 2015) (plaintiff's refinance was mishandled and resulted in a late payment that
28

furnisher acknowledged was not plaintiff's fault); *Monroe v. Grow Fin. Fed. Credit Union*, No. 8:22-cv-1333-WFJ-JSS, 2022 U.S. Dist. LEXIS 218703 (M.D. Fla. Dec. 5, 2022) (a moving company sent a debit request to plaintiff's bank for an amount equal to almost 5 times the balance owed creating an overdraft). There is no evidence of mishandling payments (or non-payments) in this case.

Plaintiffs raise "inaccuracies" with the XH code, for the first time, in the Joint Brief. Joint Brief, 35:7. None of their claims are based on this theory, and it is improper for Plaintiffs to change the theory of the claims.

Finally, "a furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, 'because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.'" *Miller v. Westlake Servs. LLC*, 637 F.Supp.3d 836, 852 (C.D. Cal. 2022) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). There was no merit to Plaintiffs' dispute as its was premised on their erroneous belief that they paid the PNC Loan in full when, in fact, they had not.

### 5.  PNC Conducted a Reasonable Investigation

Courts have held summary judgment is appropriate when "only one conclusion about the conduct's reasonableness is possible." *In re Software Toolworks, Inc.*, 50 F.3d 615, 622; *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). *Gorman* is particular instructive for this Motion. *Gorman*, 584 F.3d 1147. In *Gorman*, the court found that summary judgment was appropriate where the furnisher simply reviewed its own records to confirm the internal records of the furnisher matched those reported to the credit reporting agencies. *Id*. at 1159-61. The court recognized that the reasonableness of an investigation depends in particular on the description of the dispute in the notice from the CRAs. *Id*. at 1160. The notices from the CRAs to PNC appeared to only identify the amounts listed as past due and the current balance as being disputes, each of those contentions requires nothing more

than to review internal records to verify the amounts owed. PNC was justified in relying on its records under the circumstances

### 6. PNC Did Not Willfully Violate the FCRA

Courts have consistently held that summary judgment is appropriate in situations where the furnisher's investigation entailed merely reviewing its own internal records to verify its previous reporting. *See Westra*, 409 F.3d. 825, 827 (affirming summary judgment against an FCRA claim because the furnisher's investigation was "reasonable given the scant information it received regarding the nature of [the customer's] dispute" and noting that had the consumer provided information "that the nature of the dispute concerning fraud, then perhaps a more thorough investigation would have been warranted" but "[g]iven the facts of [the] case, however, [the furnisher's] verification of [the consumer's] information was a reasonable procedure."); *see also Scheel-Baggs v. Bank of Am.*, 575 F.Supp.2d 1031, 1040 (W.D. Wisc. 2008) (holding that the consumer's use of the word "fraud" in isolation did not render a furnisher's investigation unreasonable when the other information the consumer provided was "scant" and provided the furnisher "no reason to conduct a more thorough investigation"). As previously pointed out, the only disputes Plaintiffs sent to the CRAs involved the current balance being reported and the past due amount; both of which PNC easily verified by reviewing its own records.

### B. PNC IS ENTITLED TO SUMMARY JUDGMENT ON MR. DAVIS'S CLAIM FOR VIOLATION OF THE ROSENTHAL ACT

The only argument advanced is that Plaintiffs have established a disputed issue of fact on the FCRA claim. As discussed, there is no merit to their arguments. Mr. Davis has simply not identified any unfair debt collection practice on the part of PNC.

### C. PNC IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIMS

"Excuse for nonperformance is an affirmative defense." *Jacobs v. Tenneco W., Inc.*, 186 Cal.App.3d 1413, 1419 (1986) (citation omitted). Plaintiffs did not plead an affirmative defense of excuse for nonperformance. [JD Doc. 40. CD Doc. 41.] "In general, a party waives any affirmative defense, such as a statute of limitations, not raised in its first responsive pleading." *United States v. Colasanti*, 282 F.Supp.3d 1213, 1216 (D. Or. 2017), *aff'd*, 787 F. App'x 973 (9th Cir. 2019) (citing Fed. R. Civ. P. 8(c) and collecting authorities).

The contract is governed by Texas, not California law. Thus, the affirmative defense raised by Plaintiffs, which is based on California law, is inapplicable. Even if construed under Texas law, Plaintiffs have not stated a viable defense. In Texas, the elements of a breach of contract claim are essentially the same as they are in California: (1) the existence of a valid contract; (2) performance or tendered performance by one party; (3) nonperformance of the contract by the other party; and (4) damages caused by the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Similar to California, Texas law recognizes an affirmative defense of excuse of performance. *See Robbins v. Payne,* 55 S.W.3d 740, 747 (Tex. App. 2001) ("[A]n allegation that a breach was excused is an affirmative defense."). Because Plaintiffs did not plead ***any affirmative defenses***, they waived any defense based on an excuse for nonperformance, regardless of whether the Court applies California or Texas law. Plaintiffs do not identify any other arguments in defense of PNC's counterclaims. The record otherwise makes clear that there is no disputed issue of fact that Plaintiffs are entitled to a judicial declaration that it has the exclusive right to the November 2022 Payment and Plaintiffs have no right to a return of the payment.

DATED: January 12, 2024               **McGLINCHEY STAFFORD**

By: */s/ Sanford P. Shatz*
         BRIAN A. PAINO
         SANFORD P. SHATZ
         ZEESHAN IQBAL
Attorneys for *Defendant* **PNC BANK, N.A.**

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
) ss.
**COUNTY OF ORANGE** )

I, Carol Rico, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 18201 Von Karman Ave., Suite 350, Irvine, California 92612.

On January 12, 2024, I served the document(s) described as: **PNC BANK, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** as follows:

☐ **BY MAIL**: As follows:

☐ **FEDERAL** – I deposited such envelope in the U.S. mail at Irvine, California, with postage thereon fully prepaid.

☐ **BY EMAIL SERVICE as follows:** By email or electronic transmission: Based on any agreement between the parties and/or as a courtesy, I sent the document(s) to the person(s) at the email address(es) listed on the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's Electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF users set forth in the service list obtained from this Court. Pursuant to Electronic Filing Court Order, I hereby certify that the above documents(s) was uploaded to the website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on January 12, 2024, at Irvine, California.

_____
Carol Rico

20986045.1

# SERVICE LIST
## USDC, Central District Case No. 2:22-cv-05819-SPG-AS
### (Consolidated with Case No. 2:23-cv-00334-SPG-AS)
### JESSICA LEE DAVIS v. TRANS UNION, LLC, et al.
### File # 109081.0001

| | |
|---|---|
| Youssef Hammoud, Esq.<br>HAMMOUD LAW, P.C.<br>3744 E. Chapman Avenue, #F12269<br>Orange, CA 92859 | Attorneys for *Plaintiffs* **JESSICA LEE DAVIS and COREY DELL DAVIS**<br><br>Tel.: (949) 301-9692<br>Fax: (949) 301-9693<br>Email: yh@lawhammoud.com<br>       jristvedt@cjl.law<br>       abedolla@cjl.law<br><br>Nataly Clark – Paralegal<br>       nclark@consumerattorneys.com |
| James P. Ristvedt, Esq. *(Admitted PHV)*<br>CONSUMER ATTORNEYS<br>8245 N. 85th Way<br>Scottsdale, AZ 85258 | Attorneys for *Plaintiffs* **JESSICA LEE DAVIS and COREY DELL DAVIS**<br><br>Tel.: (480) 626-1956<br>Fax: (718) 715-1750<br>Email: jristvedt@consumerattorneys.com |
| Donald E. Bradley, Esq.<br>MUSICK, PEELER & GARRETT LLP<br>650 Town Center Drive, Suite 1200<br>Costa Mesa, CA 92626-1925 | Attorneys for *Defendant* **TRANS UNION, LLC**<br><br>Tel.: (714) 668-2400<br>Fax: (714) 668-2490<br>Email: d.bradley@musickpeeler.com |
| Kristin L. Marker, Esq.<br>Kyle Pietrzak, Esq.<br>Paul W. Sheldon, Esq.<br>QUILLING SELANDER LOWNDS WINSELTT AND MOSER PC<br>6900 North Dallas Parkway, Suite 800<br>Plano, TX 75024 | Attorneys for *Defendant* **TRANS UNION, LLC**<br><br>Tel.: (214) 560-5442<br>Fax: (214) 871-2111<br>Email: kmarker@qslwm.com<br>       kpietrzak@qslwm.com<br>       psheldon@qslwm.com |
| Thomas P. Quinn, Jr., Esq.<br>NOKES AND QUINN APC<br>410 Broadway, Suite 200<br>Laguna Beach, CA 92651 | Attorneys for *Defendant* **EQUIFAX INFORMATION SERVICES, LLC**<br><br>Tel.: (949) 376-3500<br>Fax: (949) 376-3070<br>Email: tquinn@nokesquinn.com |

20986045.1

| | | |
|---|---|---|
| 1 | Theodore Roethke, Esq.<br>SEYFARTH SHAW LLP<br>1075 Peachtree Street NE, Suite 2500<br>Atlanta, GA 30309 | Attorneys for *Defendant* **EQUIFAX INFORMATION SERVICES, LLC**<br><br>Tel.: (404) 885-1500<br>Fax: (404) 892-7056<br>Email: troethke@seyfarth.com |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | Christopher M. Johnson, Esq.<br>JONES DAY<br>4655 Executive Drive, Suite 1500<br>San Diego, CA 92121-3134 | Attorneys for *Defendant* **EXPERIAN INFORMATION SOLUTIONS**<br><br>Tel.: (858) 314-3134<br>Fax: (844) 345-3178<br>Email: cjohnson@jonesday.com |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Cheryl O'Connor, Esq.<br>JONES DAY<br>3161 Michelson Drive, Suite 800<br>Irvine, CA 92612-4408 | Attorneys for *Defendant* **EXPERIAN INFORMATION SOLUTIONS**<br><br>Tel.: (949) 851-3939<br>Fax: (949) 553-7539<br>Email: coconnor@jonesday.com |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

20986045.1