Brian A. Paino (SBN 251243)
bpaino@hinshawlaw.com
Helen Mosothoane (SBN 254511)
hmosothoane@hinshawlaw.com
Zeeshan Iqbal (SBN 337990)
ziqbal@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Ave., Ste. 3600
Los Angeles, CA 90071-3476
Telephone:   (213) 680-2800
Facsimile:   (213) 614-7399

Attorneys for *Defendant* **PNC BANK, N.A.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA LEE DAVIS and COREY DELL DAVIS,<br><br>                Plaintiffs,<br><br>     v.<br><br>TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN,<br><br>                Defendants. | Case No.: 2:22-cv-05819-SPG-AS<br><br>**DEFENDANT PNC BANK, N.A.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: July 2, 2025<br>Time: 1:30 p.m.<br>Crtm: 5C |

        *Defendant* PNC Bank, N.A. ("PNC") respectfully submits this supplemental brief in support of its *Motion for Summary Judgment* [Doc. 99] (the "MSJ"). This brief is supported by the points and authorities cited herein and the record currently before the Court.[1]

///

///

///

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the MSJ.

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.    <u>INTRODUCTION</u>

PNC remains entitled to summary judgment in this case. As with Plaintiffs' "patently incorrect" theory, no rational trier of fact could conclude that PNC's credit reporting was materially misleading in any way – *i.e.*, Plaintiffs' legally and factually unsupportable theory that their obligations on the PNC Loan were discharged by conduct short of actual payment of the debt did not amount to a bona fide dispute or render the reporting misleading. The record otherwise supports a finding that, under the circumstances, PNC conducted a reasonable investigation into Plaintiffs' credit reporting dispute. The record likewise supports a finding that PNC did not willfully violate the FCRA. Lastly, the Ninth Circuit's affirmation that PNC's credit reporting was accurate forecloses Mr. Davis's Rosenthal Act claim. For these reasons, as discussed more fully herein, summary judgment should be entered in favor of PNC.

## II.    <u>ANALYSIS</u>

### A.    <u>PNC IS ENTITLED TO JUDGMENT ON THE FCRA CLAIMS</u>

To succeed on their FCRA claims, Plaintiffs must prove, among other things, that: (1) PNC's reporting was inaccurate; and (2) PNC failed to conduct a reasonable investigation into their dispute. *See Miller v. Westlake Servs. LLC*, 637 F.Supp.3d 836, 848 (C.D. Cal. 2022). This Court previously determined that PNC's reporting was not inaccurate and the Ninth Circuit's ruling affirmed this determination. However, the Ninth Circuit observed that information furnished to a CRA may be "incomplete or inaccurate" where it is "materially misleading," even though the information is technically correct, and tasked this Court with determining whether Plaintiffs' claims survive summary judgment if viewed under a "materially misleading" theory. For the reasons discussed below, PNC remains entitled to summary judgment even if Plaintiffs' claims are construed under this theory.[2]

---

[2] At a minimum, PNC is entitled to the entry of an order summarily adjudicating that its credit reporting was not inaccurate. *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n. 3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim…").

### 1. PNC's Reporting Was Not Materially Misleading

Plaintiffs maintain that there is sufficient evidence in the record to support a finding that PNC's reporting was materially misleading. They specifically argue PNC's reporting was misleading because it did not report that Plaintiffs submitted a "bona fide dispute" regarding the status of the PNC Loan. According to Plaintiffs, this reporting gave a false impression that they were not creditworthy and deliberately refused to pay their obligations. The record does not, in fact, support a finding that PNC's reporting was incomplete or misleading. To the contrary, "a furnisher does not report 'incomplete or inaccurate' information simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be misleading." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). While Plaintiffs argue there was a bona fide dispute over the remaining sums due on the PNC Loan, their argument makes clear that the dispute was of a legal, not a factual, nature. Indeed, their claim of a bona dispute is tied to their argument that the PNC Loan was satisfied by means other than payment in full of the amounts due under the Contract. They specifically suggest their obligations were satisfied due to: (1) their alleged receipt of conflicting communications regarding the amount they owed; and (2) the possibility that Gravity received a payoff quote from BBVA.[3] Stated differently, as this Court previously observed, Plaintiffs' dispute over PNC's reporting was based on the legal consequences of the events that transpired in connection with the attempted payoff of the PNC Loan, not an actual factual inaccuracy with the information PNC reported.

Courts notably recognize that "[a] legal dispute on the underlying debt is a collateral attack on the credit report and is insufficient to sustain a FCRA claim." *Wilson v. Chrysler Capital*, 2019 U.S. Dist. LEXIS 237999, at *6-7, 2019 WL 12107374 (M.D.N.C. 2019) (collecting cases). Thus, "a plaintiff's required showing is

---

[3] Plaintiffs notably failed to raise any affirmative defenses, much less estoppel or waiver defenses, in their answers to PNC's counterclaims for breach of contract. (*See* Doc. 40, Doc. 41[Case No. 2:23-cv-00334-SPG]). And they otherwise paid the remaining sums over which they contend there was a "bona fide" dispute.

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  *factual* inaccuracy, rather than the existence of disputed legal questions." *Chiang v.*
2  *Verizon New Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (emphasis in original). This is
3  because "furnishers are neither qualified nor obligated to resolve matters that turn on
4  questions that can only be resolved by a court of law." *Id.* (citation and internal
5  quotations omitted). As this Court already concluded, there was simply no bona fide
6  factual dispute as to whether Plaintiffs owed remaining sums under the terms of the
7  Contract – they did. Whether certain conduct that occurred in connection with
8  Plaintiffs' attempt to pay off the PNC Loan provided Plaintiffs a legal or equitable
9  basis for avoiding their remaining obligations is beyond the purview of the FCRA. In
10 any event, even with the benefit of years' long litigation and discovery, Plaintiffs have
11 not established any viable legal basis for finding that their obligations on the PNC
12 Loan were discharged. Nor have they cited any objectively or readily verifiable
13 information that supports a finding that their dispute was legally valid. *See e.g.,*
14 *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024)
15 (finding a claimed inaccuracy is actionable only where it is "objectively and readily
16 verifiable"). It follows that Plaintiffs' dispute was not "bona fide," regardless of
17 whether it was based in fact or law.

18     Ultimately, as noted above, Plaintiffs contend that PNC's reporting was
19 misleading because it conveyed the false impression that Plaintiffs were not
20 creditworthy. Plaintiffs do not explain how PNC could have reported the account to
21 avoid this impression, other than to suggest PNC should have reported the account as
22 "disputed." To determine whether the lack of a "dispute" notation on the account was
23 misleading, the Court "must take into account § 1681s-2(b)(1)(E), which is the only
24 part of the [FCRA] that addresses the issue of disputes." *Scheel-Baggs v. Bank of Am.*,
25 575 F.Supp.2d 1031, 1039 (W.D. Wis. 2008). Pursuant to section 1681s-2(b)(1)(E),
26 "when 'an item of information is disputed by a consumer,' the furnisher of
27 information must modify, delete or block the disputed information if it 'is found to be
28 inaccurate or incomplete or cannot be verified after any reinvestigation.'" *Id.* (quoting

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

15 U.S.C. § 1681s-2(b)(1)(E)). "[O]nce a disputed piece of information has been verified by an investigation, § 1681s-2(b) imposes no further obligation." *Id.* The record makes clear that no level of additional factual investigation by PNC would have changed the reporting for the PNC Loan – *i.e.*, it is indisputable that Plaintiffs still owed sums under the terms of the Contract (until, of course, they tendered a final payment in November 2022, which post-dates their disputes). And, as noted above, Plaintiffs have not otherwise established any valid ***legal*** basis for finding their obligations were satisfied prior to the tendering of the post-dispute payment.

### 2. PNC's Investigation Was Not Unreasonable

The record also supports a finding that PNC's investigation was not unreasonable. A furnisher's obligation to conduct a reasonable investigation into a dispute arises when it receives notice of the dispute from one or more of the CRAs. *See Robbins v. CitiMortgage, Inc.*, 2017 U.S. Dist. LEXIS 209367, at *12-13, 2017 WL 6513662, at *5 (N.D. Cal. 2017); *see also Gorman*, 584 F.3d at 1156. In evaluating the reasonableness of an investigation, "[t]he pertinent question is [] whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157. An FCRA plaintiff "must demonstrat[e] that had the furnisher conducted a reasonable investigation, [] the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018). Summary judgment is appropriate on questions of reasonableness "when only one conclusion about the conduct's reasonableness is possible." *Id.* (citation and internal quotations omitted). Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, a furnisher need not do more than verify that the reported information is consistent with the information in its records, and to report its findings to the CRA issuing the dispute notice. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Turning to the facts of this case, the reasonableness of PNC's investigation turns on what PNC learned about the nature of Plaintiffs' dispute from the CRAs' respective notices. As set forth in her complaint, Mrs. Davis's FCRA claim is based on disputes she sent to the CRAs "on or about April 7, 2022." (JD Compl., ¶ 61). PNC actually received five dispute notifications (two of which were essentially duplicates) between March 29, 2022, and April 22, 2022, related to the reporting for Mrs. Davis. (JAF, ¶¶ 33, 38, 43, 48, 53). Mr. Davis's FCRA claim is based on disputes he submitted to the CRAs in late-July 2022 and early-August 2022. (CD Compl., ¶¶ 71, 76). PNC received just two dispute notifications for Mr. Davis during this time period. (JAF, ¶¶ 58, 63, 68). For the reasons discussed below, PNC's investigation of the foregoing disputes was reasonable under the circumstances.

### a.    Mrs. Davis's Disputes

PNC received the first of Mrs. Davis's disputes through Experian on March 29, 2022 (the "First JD Dispute"). (JAF, ¶ 33). The First JD Dispute was based on Mrs. Davis's contention that she "refinanced" the PNC Loan. (*Id.*) However, the First JD Dispute was not accompanied by any evidence demonstrating that Mrs. Davis (or anyone on her behalf) actually tendered a payment sufficient to satisfy the PNC Loan. (JAF, ¶ 34). At the time PNC received the First JD Dispute, its records reflected that there was an unpaid principal balance due on the PNC Loan of $650.85. (JAF, ¶ 36). In addition, PNC's records reflected that: (1) the PNC Loan was 150 days past-due, (JAF, ¶ 81); and (2) the total amount due on the PNC Loan, after accounting for $124.34 in interest, was $775 (rounded to the nearest dollar), (JAF, ¶ 78). Based on these records, PNC responded to the First JD Dispute by: (1) updating the "Account Status" code from "80" to "82," the latter of which signifies the PNC Loan was between 120-149 days past due; (2) updating the "Balance" to $775; and (3) updating the "Past Due Amount" to $775. (JAF, ¶ 37).[4] Plainly stated, the information PNC

---

[4] PNC also updated the "Sch. Payment" to $763 and identified the Date of First Default (or DOFD) as 12-29-2021. (JAF, ¶ 37). This reporting actually understated the amount of Plaintiffs' monthly payments (which were $883.50 under the Contract) and identified a first default date that actually

1  reported in response to the First JD Dispute was indisputably accurate (or more
2  beneficial to Mrs. Davis) and in conformity with industry standards. (JAF, ¶¶ 84, 86-
3  87). Given that Mrs. Davis did not produce any evidence with the First JD Dispute to
4  demonstrate that the PNC Loan was paid in full, it was otherwise reasonable for PNC
5  to rely on its own records when responding to the First JD Dispute.

6        On April 18, 2022, and April 20, 2022, PNC received additional disputes for
7  Mrs. Davis through Experian (collectively, the "Second JD Dispute"). (JAF, ¶¶ 38,
8  43). The Second JD Dispute essentially mirrored the First JD Dispute – *i.e.,* it was
9  based on Mrs. Davis's contention that she paid the PNC Loan in full, but was not
10 supported by any evidence supporting the contention. PNC responded to the Second
11 Dispute by: (1) updating the "Balance" to $775; (2) updating the "Amount Past Due"
12 to $775; (3) reporting the amount of $0 for the "Sch. Payment"; and (4) updating the
13 "Account History" to reflect that the PNC Loan was charged-off as of March 2022,
14 (JAF, ¶¶ 42, 47).[5] All of this information was accurate and in conformity with industry
15 standards. (JAF, ¶¶ 32, ¶¶ 77-79, 86-90). And, as was the case with PNC's response to
16 the First JD Dispute, it was reasonable for PNC to rely on its records in light of Mrs.
17 Davis's failure to provide any evidence of the PNC Loan having been paid in full.

18       PNC received a third dispute for Mrs. Davis through Equifax on April 20, 2022
19 (the "Third JD Dispute"). (JAF, ¶¶ 32, 77-79, 86-90). The Third JD Dispute was
20 similarly based on Mrs. Davis's contention that she paid the PNC Loan in full. (*Id.*)
21 Like with the First JD Dispute and Second JD Dispute, the Third JD Dispute was not
22 accompanied by any evidence establishing that the PNC Loan was, in fact, paid in

---

24 post-dated the original default date of October 29, 2022, by 60 days. Plaintiffs cannot state a viable
25 FCRA claim based on this reporting because: (1) none of their disputes were based on this
   information and (2) the reporting was beneficial, not harmful, to them. *See Stagger v. Experian Info.
   Sols., Inc.*, 2022 U.S. Dist. LEXIS 39267, 2022 WL 632838, at *2 (N.D. Ill. 2022) (finding no injury
26 where credit reporting was more favorable to the plaintiff); *Bueno v. Experian Info. Sols., Inc.*, 664
   F.Supp.3d 800, 805-806 (N.D. Ill. 2023) (discussing the same issue).
27 [5] As with its prior response, PNC also indicated in its response to the Second JD Dispute that the
   Date of First Default was 12-29-21. For the reasons previously discussed, the reporting of this date
28 was beneficial, not harmful, to Mrs. Davis, and therefore does not serve as a basis for finding
   liability under the FCRA.

1073973/325061249.v1

full. (*Id.*) Ultimately, PNC responded to the Third JD Dispute by: (1) updating the "Account Status" code from "82" to "97," the latter of which signified the PNC Loan was charged-off; (2) updating the "Date of Last Payment" to September 28, 2021; (3) updating the "Sch. Payment" to $0; and (4) updating the "Account History" to reflect that the PNC Loan was charged off as of March 2022.[6] (JAF, ¶ 52). This information was consistent with PNC's records and industry standards for credit reporting. (JAF, ¶¶ 32, 85, 88, 94-95). Again, it was reasonable for PNC to rely on its records to respond to the Third JD Dispute given Mrs. Davis's failure to provide any evidence to corroborate her contention that the PNC Loan was actually paid in full.

Finally, on April 22, 2022, PNC received a fourth dispute for Mrs. Davis through Trans Union (the "Fourth JD Dispute"). (JAF, ¶ 53). The Fourth JD Dispute was based on Mrs. Davis's contention that she paid the PNC Loan in full before it was charged-off and that she was never late on her payments to PNC. (*Id.*) As with the prior disputes, the Fourth JD Dispute was not supported by any evidence that the PNC Loan was, in fact, paid in full. (*Id.*) PNC responded to the Fourth JD Dispute by: (1) updating the "Balance" to $775; (2) updating the "Amount Past Due" to $775; (3) removing a data point for the "Date Closed" field; and (4) updating the "Account History" to reflect the PNC Loan was charged-off as of March 2022. (JAF, ¶ 57).[7] The information PNC reported in response to the Fourth JD Dispute was consistent with its records (or more beneficial to Mrs. Davis) and industry standards for credit reporting. (JAF, ¶¶ 32, 78, 86-87, 89, 92).

It was otherwise reasonable for PNC to rely on its records given Mrs. Davis's failure to produce evidence to corroborate her contention that the PNC Loan was paid-in-full. In any event, the record demonstrates that Plaintiffs have failed to meet their burden of showing that PNC would have discovered its reporting was incomplete or

---

[6] The response to the Third JD Dispute also identified a Date of First Default of 12-29-2021. As noted above, this date understated the extent of Plaintiffs' default and was therefore not harmful or actionable under the FCRA.

[7] The response to the Fourth Dispute also changed the "Date of Last Payment" field to March 16, 2022. This date was beneficial to Plaintiffs as it understated the length of time since they last made a payment.

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  inaccurate had it undertaken a different investigation. *See Felts*, 893 F.3d at 1313.

2  Stated differently, no investigation would have changed the fact that Plaintiffs did not,

3  in fact, satisfy their obligations under the PNC Loan; this conclusion is made evident

4  by the fact that Plaintiffs' own investigation through this lawsuit failed to yield a basis

5  for finding that the PNC Loan was satisfied.

6  ### b.    Mr. Davis's Disputes

7  PNC received the first of Mr. Davis's disputes through Trans Union on August

8  4, 2022 (the "First CD Dispute"). (JAF, ¶ 58). The First CD Dispute was based on Mr.

9  Davis's contention that the PNC Loan "should be reported [as] closed with [a] 0

10  balance." (*Id.*) Importantly, the First CD Dispute was not accompanied by any

11  evidence demonstrating that Mr. Davis actually paid the PNC Loan in full. (*Id.*) In

12  response to the First CD Dispute, PNC: (1) removed a data point for the "Date

13  Closed" field; and (2) updated the "Account History" to reflect a "charged-off" status

14  for the month of July 2022. (JAF, ¶ 62). This information was consistent with PNC's

15  records and industry reporting standards. (JAF, ¶¶ 32, 89, 92). Because Mr. Davis

16  offered no evidence in support of his contention that the PNC Loan should be reported

17  with a zero balance, it was reasonable for PNC to rely on its records and industry

18  reporting standards when responding to the First CD Dispute.

19  On August 6, 2022, PNC received a second dispute for Mr. Davis through

20  Equifax (the "Second CD Dispute"). (JAF, ¶ 63). The Second CD Dispute, like the

21  First CD Dispute, was based on Mr. Davis's contention that he paid the PNC Loan in

22  full, but was not accompanied by proof that the PNC Loan was, in fact, paid in full.

23  (*Id.*) PNC responded to the Second CD Dispute by updating the "High Credit" amount

24  field to $61,426. (JAF, ¶ 67). There can be no dispute that this data point was accurate

25  and conformed with industry reporting standards. (JAF, ¶¶ 2, 93). While PNC did not

26  update the reporting as Mr. Davis requested, this fact does not render PNC's

27  investigation unreasonable. To the contrary, PNC's investigation was decidedly

28  reasonable given that Mr. Davis produced no evidence demonstrating he paid the PNC

Loan in full and PNC's records reflected there was a remaining balance due on the loan. As noted above, Plaintiffs have not otherwise demonstrated that PNC could have undertaken some form of further investigation that would have caused it to discover its reporting of the PNC Loan was inaccurate.

In sum, Plaintiffs' disputes were all based on their contentions that they paid the PNC Loan in full – they were not based on alleged inconsistent communications, alleged discrepancies between PNC's responses to their disputes, or the consequences of PNC or its predecessor allegedly providing inaccurate information regarding the PNC Loan to Plaintiffs or Gravity. They unsurprisingly have not produced any evidence to support their underlying theory. Given Plaintiffs' failure to corroborate their contention that they paid the PNC Loan in full, it was reasonable for PNC to review its own records in responding to the disputes and to update its reporting based on these records (and industry reporting standards). *See Westra*, 409 F.3d at 827.

### 3.    PNC Did Not Willfully Violate the FCRA

In addition to baseline actual damages, Plaintiffs seek statutory damages under the FCRA, an issue this Court did not reach due to its findings regarding the accuracy of PNC's reporting. To establish a "willful" violation of § 1681e(b), a plaintiff must demonstrate that the defendant either knowingly or recklessly violated the statute. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57–59 (2007). Importantly, courts recognize that "[t]he standard for willfulness is high: a consumer must establish that the violator acted in reckless disregard of the statute." *Wynn v. United Parcel Serv., Inc.*, 2023 WL 2324288, at *4 (N.D. Cal. 2023) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)). Plaintiffs cannot meet this standard. As previously discussed, PNC's reporting of the PNC Loan was indisputably accurate and its investigation of Plaintiffs' disputes was reasonable under the circumstances. Absent the ability to establish a baseline negligent violation of the FCRA, Plaintiffs are obviously unable to demonstrate that PNC committed a willful violation. Accordingly, Plaintiffs are not entitled to statutory penalties under the FCRA. Nor are they entitled to punitive

damages. *See* 15 U.S.C. § 1681n(a)(2) (conditioning an award of punitive damages on a willful violation).

### B.    MR. DAVIS'S ROSENTHAL ACT CLAIM FAILS

The viability of Mr. Davis's claim under the Rosenthal Act is dependent on him establishing that PNC violated a provision of the Act. *See Stone v. Friedman*, 2022 U.S. Dist. LEXIS 138056, at *6, 2022 WL 3012213, at *3 (C.D. Cal. 2022). As pleaded, Mr. Davis's claim consists of nothing more than conclusory allegations. (*See* CD Compl., ¶ 178). At bottom, and as the Court previously observed, the claim is premised on his contention that PNC improperly sought to collect on the PNC Loan after it was purportedly paid in full. But the only collection activities he identifies are: (1) a collection letter from December 2021 that purportedly sought to "collect a debt [he] did not owe" and (2) PNC's purported communication of credit information to the CRAs that it knew or should have known to be false. (*See id.* at ¶¶ 34, 172, 178). Given the purported collection activities that underly Mr. Davis's claim, the claim is clearly dependent on a showing that he, in fact, satisfied his obligations under the PNC Loan. This Court previously determined that "PNC has set forth evidence conclusively demonstrating that this is not true." While the Ninth Circuit's ruling permits Plaintiffs to pursue a "materially misleading" theory in the context of their FCRA claim, this theory has no application in the context of Mr. Davis's Rosenthal Act claim. And the Ninth Circuit otherwise affirmed this Court's determination that Plaintiffs did not satisfy their obligations under the PNC Loan. It necessarily follows that PNC remains entitled to summary judgment on Mr. Davis's Rosenthal Act claim.

## III.    CONCLUSION

For the reasons set forth herein, PNC is entitled to summary judgment.

**HINSHAW & CULBERTSON LLP**

Dated: June 13, 2025

*/s/ Brian A. Paino*

BRIAN A. PAINO
Attorneys for *Defendant* **PNC BANK, N.A.**

# PROOF OF SERVICE

### *Jessica Lee Davis v. Trans Union, LLC, et al.*
**USDC, Central District Case No. 2:22-cv-05819-SPG-AS
(Consolidated with Case No. 2:23-cv-00334-SPG-AS)**

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 350 South Grand Ave., Suite 3600, Los Angeles, CA 90071-3476. Email: crico@hinshawlaw.com

On **June 13, 2025**, I served the document(s) entitled: **DEFENDANT PNC BANK, N.A.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

## SEE ATTACHED SERVICE LIST

☐ **(BY MAIL)**:      I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(VIA OVERNIGHT MAIL)**:  I am "readily familiar" with the firm's practice of collection and processing correspondence for overnight delivery. Under that practice it would be deposited in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence.

☒ **(BY CM/ECF SERVICE)**:      I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **June 13, 2025**, at Anaheim, California.

_____
Carolina Rico

## SERVICE LIST

### *Jessica Lee Davis v. Trans Union, LLC, et al.*
**USDC, Central District Case No. 2:22-cv-05819-SPG-AS**
**(Consolidated with Case No. 2:23-cv-00334-SPG-AS)**

| | |
|---|---|
| Youssef Hammoud, Esq.<br>HAMMOUD LAW, P.C.<br>3744 E. Chapman Avenue, #F12269<br>Orange, CA 92859<br>Tel.: (949) 301-9692<br>Fax: (949) 301-9693<br>Email: yh@lawhammoud.com<br>    jristvedt@cjl.law<br>    abedolla@cjl.law<br><br>Nataly Clark – Paralegal<br>    nclark@consumerattorneys.com | Attorneys for *Plaintiffs* **JESSICA LEE DAVIS and COREY DELL DAVIS** |
| James P. Ristvedt, Esq. *(Admitted PHV)*<br>CONSUMER ATTORNEYS<br>8245 N. 85th Way<br>Scottsdale, AZ 85258<br>Tel.: (480) 626-1956<br>Fax: (718) 715-1750<br>Email: jristvedt@consumerattorneys.com | Attorneys for *Plaintiffs* **JESSICA LEE DAVIS and COREY DELL DAVIS** |
| Donald E. Bradley, Esq.<br>MUSICK, PEELER & GARRETT LLP<br>650 Town Center Drive, Suite 1200<br>Costa Mesa, CA 92626-1925<br>Tel.: (714) 668-2400<br>Fax: (714) 668-2490<br>Email: d.bradley@musickpeeler.com | Attorneys for *Defendant* **TRANS UNION, LLC** |
| Kristin L. Marker, Esq.<br>Kyle Pietrzak, Esq.<br>Paul W. Sheldon, Esq.<br>QUILLING SELANDER LOWNDS WINSELTT AND MOSER PC<br>6900 North Dallas Parkway, Suite 800<br>Plano, TX 75024<br>Tel.: (214) 560-5442<br>Fax: (214) 871-2111<br>Email: kmarker@qslwm.com<br>    kpietrzak@qslwm.com<br>    psheldon@qslwm.com | Attorneys for *Defendant* **TRANS UNION, LLC** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas P. Quinn, Jr., Esq.
NOKES AND QUINN APC
410 Broadway, Suite 200
Laguna Beach, CA 92651
Tel.: (949) 376-3500
Fax: (949) 376-3070
Email: tquinn@nokesquinn.com

Attorneys for *Defendant* **EQUIFAX INFORMATION SERVICES, LLC**

Christopher M. Johnson, Esq.
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Tel.: (858) 314-3134
Fax: (844) 345-3178
Email: cjohnson@jonesday.com

Attorneys for *Defendant* **EXPERIAN INFORMATION SOLUTIONS**

Cheryl O'Connor, Esq.
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
Tel.: (949) 851-3939
Fax: (949) 553-7539
Email: coconnor@jonesday.com

Attorneys for *Defendant* **EXPERIAN INFORMATION SOLUTIONS**